**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEVIN TERRANCE COIT,** | : | |
| **Plaintiff** | : | **No. 1:22-cv-01277** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **N. WYNDER, et al.,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Currently before the Court are Defendants' motion to dismiss pro se Plaintiff Kevin

Terrance Coit ("Coit")'s amended complaint as well as Coit's motion that the Court has

construed as a motion for an extension of time to file a brief in opposition to the motion to

dismiss.  For the reasons set forth below, the Court will grant Coit's motion for an extension of

time, deem his opposition brief to have been timely filed, grant in part and deny in part

Defendants' motion to dismiss the amended complaint, dismiss certain claims in the amended

complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), and grant Coit leave to file a second

amended complaint as to those claims that the Court dismisses without prejudice.

## I.    BACKGROUND

### A.    Procedural History

Coit, a convicted and sentenced state prisoner,[1] commenced this action by filing a

complaint, an application for leave to proceed in forma pauperis ("IFP Application"), and a

certified prisoner account statement, all of which the Clerk of Court docketed on August 16,

2022.  (Doc. Nos. 1–3.)  In the complaint, Coit asserted claims under 42 U.S.C. § 1983 for

---

[1]  Coit is currently incarcerated in the Commonwealth of Pennsylvania Department of
Corrections ("DOC") at Pennsylvania State Correctional Institution Greene.  Coit is also a
frequent federal civil litigant who has filed numerous actions in Pennsylvania's federal district
courts, including several that have been assigned to the undersigned.

violations of his constitutional rights based on incidents that allegedly occurred while he was

incarcerated at Pennsylvania State Correctional Institution Frackville ("SCI Frackville") in 2022.

(Doc. No. 1 at 2–7.)  Coit named as Defendants six (6) individuals who appeared to work at SCI

Frackville during the events described in Coit's complaint: (1) Wynder; (2) Kephart; (3)

Wentzel; (4) Wegrzynowicz; (5) R. Boyce; and (6) O'Mara.[2]  (Id. at 2–4.)

On September 14, 2022, the Court granted Coit's IFP Application, deemed his complaint

filed, directed the Clerk of Court to serve a copy of the complaint upon Defendants, and

requested that Defendants waive service pursuant to Rule 4(d) of the Federal Rules of Civil

Procedure.  (Doc. No. 6.)  After waiving service (Doc. No. 11), Defendants filed a motion to

dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and a

supporting brief (Doc. Nos. 12, 16).  After Defendants moved to dismiss the complaint, Coit

filed a motion seeking the appointment of counsel, as well as a supporting brief.  (Doc. Nos. 13,

14.)  Coit did not, however, file a brief in opposition to the motion to dismiss his complaint.  See

M.D. Pa. L.R. 7.6 (providing that "[a]ny party opposing any motion . . . shall file a brief in

opposition within fourteen (14) days after service of the movant's brief . . . ").

On June 29, 2023, the Court issued a Memorandum and Order which, inter alia, (1)

granted Defendants' motion to dismiss the complaint, (2) provided Coit with thirty (30) days to

file an amended complaint, and (3) denied without prejudice Coit's motion to appoint counsel.

(Doc. Nos. 20, 21.)  Coit timely filed his amended complaint against Defendants on July 20,

2023.  (Doc. No. 22.)  Defendants filed a motion to dismiss the amended complaint and a

supporting brief on August 3, 2023, and August 17, 2023, respectively.  (Doc. Nos. 23, 24.)  Coit

---

[2]  Coit incorrectly identifies this Defendant's last name as "O'Mara" in his complaint and
amended complaint.  See (Doc. Nos. 1 at 4; 22 at 1, 4).  The Court uses the correct spelling in
this Memorandum.

filed a brief in opposition to the motion on January 8, 2024. (Doc. No. 28.) He also filed a motion in opposition to the motion to dismiss and a supporting affidavit in which he collectively argues that the Court should consider his opposition brief to be timely filed due to certain events that occurred while he was incarcerated at Pennsylvania State Correctional Institutional Rockview ("SCI Rockview"). (Doc. Nos. 29–30.)

### B. Allegations, Legal Claims, and Requests for Relief in the Amended Complaint

In his amended complaint, Coit alleges that on May 16, 2022, he was transferred to SCI Frackville and placed in the Behavioral Management Unit ("BMU"). (Doc. No. 22 at 7.) After being placed in the BMU, Coit informed the following Defendants that he should not be incarcerated at SCI Frackville due to "active separations": (1) Wegrzynowicz, a Unit Manager; (2) Wynder and Kephart, two (2) Deputies; (3) Wentzel, a Counselor; and (4) Boyce, a Psychological Services Specialist. (Id. at 3–5, 7.) In response, Coit was told that those "separations would not be an issue and [he] should focus on progressing through the BMU." See (id. at 7).

"[D]ue to the way [Coit's] conversation with [those Defendants] went, [he] began to file grievances and request slips to staff [in which he] voic[ed] safety concerns and inform[ed] staff [he] could not be [confined] at SCI Frackville because inmates Zakeem Johnson [("Johnson")] and Ralphael Spearman [("Spearman")] had separations on [him]." See (id.). Shortly after submitting request slips, "inmate Smith [("Smith"),] a highly assaultive prisoner[,] began to threaten [Coit]." See (id.). Coit reported Smith's threats to all Defendants, who did nothing to separate Coit from Smith. (Id.)

Coit then proceeded to submit three (3) requests to certain groups of Defendants pertaining to Smith in late-May through June 2022. (Id. at 7–8.) On or about May 24, 2022,

3

Coit submitted his first request to Wynder and Wegrzynowicz about Smith's "assaultive behaviors." See (id.). In this request, Coit informed Wynder and Wegrzynowicz that "Smith was threatening and delivering messages for Spearman" and yet, Defendants did not separate Smith from Coit. See (id.).

Coit submitted his second request on or about June 13, 2022, to Wegrzynowicz, Wynder, Boyce, Wentzel, and Kephart, in which he expressed "safety concerns." See (id.). On June 22, 2023, Coit put in his third request to Wegrzynowicz, Wynder, O'Mara (a Corrections Classification Program Manager ("CCPM")), and Kephart, in which he indicated he "was in fear for his safety." See (id. at 8). These Defendants responded to Coit by "simply stat[ing that he] will not be scheduled for activities with any of these individuals." See (id.). Coit points out that despite this representation, Defendants "kept [him] in the same group with" Smith. See (id.).

On July 3, 2022, Coit received an email from Spearman telling him to "come to population." See (id.). The following day, Smith logged into Coit's email account and sent Spearman a message "under the guise that he was [Coit]." See (id.). Due to Smith's message, Coit was placed in handcuffs. (Id.)

On July 6, 2022, Coit spoke to O'Mara and Kephart about "all of his safety concerns and again nothing was done." See (id.). Ten (10) days later, Smith was "throwing liquids at the [correctional officers]" when it was Coit's turn to be escorted to the yard. See (id.). Coit was strip-searched to prepare him to go to the yard, and once he was naked, Smith threatened Coit by saying he "is about to get [him]." See (id.). "When walking by," Smith "threw an unknown liquid" at Coit, which hit Coit's left leg. See (id.).

Along with the above allegations, Coit avers that on July 7, 2022, he spoke to Wegrzynowicz, Wynder, Kephart, O'Mara, and Wentzel about whether he could have certain

privileges.  (Id. at 9.)  More specifically, Coit asked whether he could receive "the same privileges as [BMU] inmate Kenneth Lewis [("Lewis")]," including "extra game time, keyboard, denture cup, and bucket," since Coit "will not be able to participate in Phase 2[,] which allows [him] to go to population."  See (id.).  Defendants then began discussing Coit's grievances and told him that if he withdrew grievance no. 986463, he could have the same privileges as Lewis.  (Id.)  Coit declined to withdraw this grievance and explained to Defendants that he was in the same situation as Lewis.  (Id.)  Defendants then told Coit that he "brought all this on [himself] and told [him] he [wa]s being placed back in handcuffs for no justified reason."  See (id.).

Next, on July 20, 2022, Coit asked Wegrzynowicz about getting the same "privilege" as Lewis.  See (id.).  At the time, Coit was "still a Phase two and . . . Lewis was a Phase two [BMU] prisoner."  See (id.).  Wegrzynowicz told Coit that if he withdrew grievance no. 989028, then Coit could have the same privileges as Lewis.  (Id.)  Coit asserts that he and Lewis were similarly situated because they were both BMU prisoners and "[D]efendants had absolutly [sic] no justification to single [out Coit]."  See (id.).

Based on these factual allegations, Coit asserts the following claims under Section 1983 against the following Defendants: (1) failure to protect in violation of the Eighth Amendment against all Defendants; (2) retaliation in violation of the First Amendment against Wegrzynowicz, Wynder, O'Mara, Kephart, and Wentzel; (3) violation of his right to equal protection under the Fourteenth Amendment against Wegrzynowicz, Wynder, O'Mara, Kephart, and Wentzel; (4) cruel and unusual punishment in violation of the Eighth Amendment against Wegrzynowicz, Wynder, O'Mara, Kephart, and Wentzel; (5) unlawful conditions of confinement in violation of the Eighth Amendment against Wegrzynowicz, Wynder, O'Mara, Kephart, and Wentzel; and (6) violation of his right to due process under the Fourteenth Amendment against

Wegrzynowicz, Wynder, O'Mara, Kephart, and Wentzel.  See (id. at 10, 11).  Coit avers that he suffered injuries in the nature of "mental anguish, emotional distress, and emotional anguish."  See (id. at 11).  For relief, Coit seeks "lawyer fees, court cost [sic], [and $]150,000."  See (id.).

## II.    LEGAL STANDARDS

### A.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require that an amended complaint provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," an amended complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the amended complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 312 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal, an amended complaint must set out "sufficient factual matter" to show that the claims therein are facially plausible.  See id.  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  As the Supreme Court

instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the amended complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of an amended complaint under Twombly and Iqbal, the Third Circuit Court of Appeals has identified the following steps a district court must take under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the amended complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the amended complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).  When following these steps, "a court must consider only the [amended] complaint, exhibits attached to the [amended] complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In addition, in the specific context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a pro se litigant, we have a special obligation to construe [their] complaint liberally" (citation and internal quotation marks omitted)).  Therefore, a pro se [amended] complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal

quotation marks omitted) (quoting <u>Estelle</u>, 429 U.S. at 106).  This means the Court must always "remain flexible, especially 'when dealing with imprisoned pro se litigants . . . .'"  <u>See</u> <u>Vogt v. Wetzel</u>, 8 F.4th 182, 185 (3d Cir. 2021) (quoting <u>Mala v. Crown Bay Marina, Inc.</u>, 704 F.3d 239, 244–45 (3d Cir. 2013)).  Moreover, when construing a pro se amended complaint, the Court will "apply the relevant legal principle even when the complaint has failed to name it."  <u>See</u> <u>Mala</u>, 704 F.3d at 244.  However, pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'"  <u>See</u> <u>Vogt</u>, 8 F.4th at 185 (quoting <u>Mala</u>, 704 F.3d at 245).

**B.    Continuing Review Under 28 U.S.C. § 1915(e)(2)(B)**

Because the Court granted Coit leave to proceed <u>in forma pauperis</u> (Doc. No. 6), the Court "shall dismiss the case <u>at any time</u> if the [C]ourt determines that . . . the action . . . fails to state a claim upon which relief may be granted[] or . . . seeks relief against a defendant who is immune from such relief."  <u>See</u> 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii) (emphasis added); <u>see also</u> <u>Phillips v. Superintendent Chester SCI</u>, 739 F. App'x 125, 131 n.14 (3d Cir. 2018) (unpublished) (rejecting plaintiff's argument that the district court "should not have screened [one of his claims] under § 1915(e)(2) because the Commonwealth Defendants had already been served" as meritless insofar as Section 1915(e)(2)(B)(ii) requires a district court to dismiss a cause of action "at any time" if the plaintiff fails to state a claim upon which relief may be granted (citing 28 U.S.C. § 1915(e)(2)(B)(ii))).  In reviewing a plaintiff's legal claims under Section 1915(e)(2)(B)(ii), the Court applies the standard governing Rule 12(b)(6) motions to dismiss. <u>See, e.g.</u>, <u>Smithson v. Koons</u>, No. 15-cv-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a[n amended] complaint for failure to state a claim under . . . § 1915(e)(2)(B)(ii) . . . is the same as that for dismissing a[n amended] complaint

pursuant to [Federal Rule of Civil Procedure]  12(b)(6).”), <u>report and recommendation adopted</u>, 2017 WL 3008559 (M.D. Pa. July 14, 2017).

## C. Section 1983

Section 1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  <u>See</u> 42 U.S.C. § 1983. This statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

<u>See</u> <u>id.</u>  “Section 1983 is not a source of substantive rights,” but is merely a means through which “to vindicate violations of federal law committed by state actors.”  <u>See</u> <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 284–85 (2002)).  “To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.”  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

## III. DISCUSSION

### A. Coit’s Motion for an Extension of Time to File an Opposition Brief

In responding to Defendants’ motion to dismiss, Coit submitted three (3) documents, a “Motion in Opposition to [D]efendants [sic] Motion to [D]ismiss Amended Complaint” (Doc. No. 28), “Plaintiff [sic] Motion in Opposition to [D]efendants [sic] Motion to [D]ismiss” (Doc. No. 29), and the “Affidavit of Kevin Coit” (Doc. No. 30).  The Court construes the first of these documents (Doc. No. 28) as Coit’s brief in opposition to Defendants’ motion to dismiss and

construes the second and third documents as a motion for an extension of time to file a brief in opposition to Defendants' motion to dismiss as well as Coit's affidavit in support of this motion. Additionally, it appears that Coit further supported his motion for an extension of time by attaching to his opposition brief over fifty (50) pages of documents consisting of, inter alia, copies of grievances he submitted, responses to those grievances, and inmate request to staff forms he submitted.  (Doc. No. 28-2.)

The Court can extend the time for Coit to file his opposition brief if he shows "good cause" for the extension.  See Fed. R. Civ. P. 6(b)(1) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . .").  "'Good cause' is understood to mean '[a] legally sufficient reason,' and it reflects 'the burden placed on a litigant (usu[ally] by court rule or order) to show why a request should be granted or an action excused.'"  Joseph v. Hess Oil V.I. Corp., 651 F.3d 348, 351 (3d Cir. 2011) (first alteration in original) (quoting Black's Law Dictionary 251 (9th ed. 2009)).  In addition, because Coit submitted his motion after his time to file his opposition brief expired, the Court must determine whether he failed to timely act "because of excusable neglect."  See Fed. R. Civ. P. 6(b)(2).  Four (4) factors are relevant in determining whether a party's neglect is excusable: "(1) the danger of prejudice; (2) the length and effect of the delay; (3) the reason for the delay; and (4) whether the movant acted in good faith."  See Iseley v. Talaber, No. 05-cv-00444, 2008 WL 416885, at *3 (M.D. Pa. Feb. 13, 2008) (citing Pioneer Inv. Servs., Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)).

Here, Coit asserts that he did not receive Defendants' motion to dismiss his amended complaint until almost three (3) months after they filed it with the Court.  (Doc. No. 30 at 2.) Coit also states that due to his mental health issues, he was denied pens, paper, and mail in the

prison.  (Id.)  He also had difficulty submitting grievances because he was placed on a grievance

restriction, and he claims to have had his legal materials taken from him.  (Id.).  Overall, while

the Court need not decide the veracity of some of Coit's assertions, the Court finds that he has

set forth good cause to extend the time for him to file his opposition brief.  Moreover, the

Defendants are not prejudiced by this extension, Coit has generally explained the reasons for the

delay, he appears to have acted in good faith, and the delay did not negatively affect this case.

Accordingly, the Court will grant his motion seeking an extension of time to file his opposition

brief and deem his opposition brief (Doc. No. 28) to have been timely filed.

### B.    Screening Coit's Request for Monetary Damages

Before addressing Defendants' motion to dismiss Coit's Section 1983 causes of action in

his amended complaint, the Court will address an issue with Coit's request for monetary

damages.  Coit, who is proceeding in forma pauperis, seeks $150,000 in monetary damages in

his amended complaint.  (Doc. No. 22 at 11.)  The Court has screened this claim for relief and

concludes that, to the extent that this monetary demand represents Coit's intent to seek

compensatory damages under Section 1983, his claim is subject to dismissal for the failure to

state a claim under Section 1915(e)(2)(B)(ii).

The Prison Litigation Reform Act ("PLRA") prevents a plaintiff-prisoner asserting a

Section 1983 claim from seeking compensatory damages for mental or emotional injuries

without a showing of physical injury.  See 42 U.S.C. § 1997e(e) ("No Federal civil action may

be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or

emotional injury suffered while in custody without a prior showing of physical injury or the

commission of a sexual act (as defined in section 2246 of Title 18).");  Mitchell v. Horn, 318 F.3d

523, 533 (3d Cir. 2003) ("Section 1997e(e)'s requirement that a prisoner demonstrate physical

injury before [they] can recover for mental or emotional injury applies only to claims for compensatory damages.").  To satisfy the PLRA, the plaintiff-prisoner must allege a "less-than-significant-but-more-than-de minimis physical injury."  See Mitchell, 318 F.3d at 534.  If a plaintiff-prisoner fails to allege a sufficient physical injury in the context of an alleged constitutional violation, they may not seek an award of compensatory damages; however, they may still seek nominal or punitive damages.  See id. at 533; see also Allah v. Al-Hafeez, 226 F.3d 247, 251–52 (3d Cir. 2000) (concluding that Section 1997e(e) does not bar plaintiff from seeking award of nominal or punitive damages for alleged constitutional violation).[3]

Here, Coit does not allege that he was physically injured at any point, including when Smith hit Coit's leg with an unidentified liquid.  Thus, his allegations fail to satisfy Section 1997e(e)'s physical injury requirement, and the Court will dismiss Coit's Section 1983 claim for compensatory damages under Section 1915(e)(2)(B)(ii) for the failure to state a claim.

## C.    Defendants' Motion to Dismiss the Amended Complaint

### 1.    Coit's Eighth Amendment Claims

Coit references three (3) Eighth Amendment claims in his amended complaint: a general Eighth Amendment cruel-and-unusual-punishment claim; a failure-to-protect claim; and a general conditions-of-confinement claim.  See (Doc. No. 22 at 10, 11).  Defendants move to

---

[3]  Coit does not request nominal or punitive damages in his amended complaint.  See (Doc. No. 22 at 11).  Nevertheless, such a failure likely would not in itself preclude Coit from seeking those forms of relief at trial.  See Allah, 226 F.3d at 251 ("Although Allah does not expressly seek nominal damages in his complaint, this court has held that 'it is not necessary to allege nominal damages'" (quoting Basista v. Weir, 340 F.2d 74, 87 (3d Cir. 1965))); Wolking v. Linder, No. 23-cv-00806, 2024 WL 3729864, at *5 (M.D. Pa. Aug. 8, 2024) (concluding that plaintiffs' lack of demand for punitive damages in complaint "does not itself bar them from recovering such damages from [defendant]" (citations omitted)); see also Fed. R. Civ. P. 8(a)(3) (requiring that a pleading contain "a demand for the relief sought"); Fed. R. Civ. P. 54(c) (providing that, outside of the default judgment context, "[e]very . . . final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings").

dismiss all three (3) Eighth Amendment claims for his failure to state plausible claims for relief. The Court agrees.

a.    **Preliminary Concerns with Coit's Allegations in Support of His Eighth Amendment Claims**

Preliminarily, there are two (2) aspects of Coit's submissions warranting discussion prior to addressing the merits of Defendants' motion to dismiss his Eighth Amendment claims.  First, Coit's brief in opposition to Defendants' motion contains numerous factual allegations not contained in his amended complaint.  See (Doc. No. 28 at 2–3).  For instance, Coit alleges in his opposition brief that, inter alia: (1) other inmates had separation orders on him because he had previously assaulted them, (id. at 2); (2) when Coit did not stop filing grievances and "request slips" as requested by Defendants, they began giving his "personal information out and threatend [sic] [him] with violence and attacks," see (id.); (3) Defendants gave several of Coit's requests and "his Kiosk information" to Smith and called Coit a "rat" despite Smith having "an extensive assault history on staff and inmates," see (id.); (4) Smith threatened to assault Coit; and (5) despite Coit notifying Defendants about his concerns for his safety, Smith "remained in the same groups, yards, and dayrooms" as Coit, see (id.).[4]  In addition, Coit attaches as exhibits to his opposition brief thirty-four (34) pages from an "Access to Mental Health Care Procedures Manual."  (Doc. No. 28-1.)

Regarding Coit's new factual allegations in his opposition brief, this Court may not consider them in resolving Defendants motion to dismiss.  "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  Commw. of Pa. ex rel.

---

[4]  Coit's brief also contains factual allegations pertaining to his other causes of action that are not contained in his amended complaint; however, for purposes of this Memorandum the Court specifies only those factual allegations potentially related to his Eighth Amendment claims.

Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted); see also

Grayson v. Mayview State Hosp., 293 F.3d 103, 109 n.9 (3d Cir. 2002) ("For the sake of clarity,

a prisoner plaintiff (or any other plaintiff) should not be able effectively to amend a complaint

through any document short of an amended pleading."); Blair v. City of Pittsburgh, No. 14-cv-

01473, 2015 WL 1859672, at *1 (W.D. Pa. Apr. 22, 2015) ("[W]hen a plaintiff improperly relies

upon new allegations not set forth in [their] complaint and other matters outside the pleadings in

opposition to a motion to dismiss, such additional facts cannot be considered by the Court in the

context of deciding a Rule 12(b)(6) Motion." (citations omitted)).  Thus, Coit's inclusion of new

factual allegations in his response to Defendants' motion to dismiss is improper and will not be

considered.

　　　　Similarly, Coit's attachment of pages from an unidentified manual is equally improper

because he cannot attempt to amend his amended complaint through his response to the motion

to dismiss.  Moreover, this manual (presumably a DOC manual) is not referenced in the amended

complaint and, even had the complaint referenced the manual, the pages attached as an exhibit

are not "undisputably authentic," and it is not evident that the materials are in fact a DOC

manual.  See Mayer, 605 F.3d at 230 (explaining that when resolving a motion to dismiss, a

district court may consider, inter alia, "undisputedly authentic documents if the complainant's

claims are based upon these documents" (citing Pension Benefit Guar. Corp., 998 F.2d at 1196)).

Overall, the Court will "disregard any documents or information improperly before the Court,"

see S.E. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc., No. 12-cv-00993, 2016 WL 7117455, at

*7 (M.D. Pa. Dec. 7, 2016) (citations omitted), including Coit's new factual allegations and

attached exhibit in resolving Defendants' motion to dismiss.

The second area of concern relates to the inconsistency between Coit's factual allegations in his amended complaint and the documents already in the record in this case, such as those he attached to his original complaint. In this regard, Coit alleges in his amended complaint that he submitted inmate "request to staff forms" to certain groups of Defendants on or about May 24, 2022, June 13, 2022, and June 22, 2022, in which he notified them that Smith has "assaultive behaviors" and was delivering messages for Spearman, he had safety concerns, and was in fear for his safety, respectively. See (Doc. No. 22 at 7, 8). Coit also attached copies of inmate request to staff forms dated May 24, 2022, June 13, 2022, and June 22, 2022, to his original complaint. See (Doc. No. 1 at 1-2–1-4).

Reviewing those inmate request to staff forms shows that they differ from Coit's allegations insofar as he directed them all to only Wegrzynowicz and not any other Defendant. See (id.). Those forms also differ from Coit's allegations because they do not mention Smith at all. See (id.). Instead, in the forms Coit repeatedly expressed his fear of being assaulted because Johnson and Spearman were also confined at SCI Frackville, they had a "problem" or "issue" with him, and they were "gang affiliated with the Bloods." See (id.). In addition, Coit stated that he did "not want to go to this population while [Johnson and Spearman] are here [and did] not want to do Phase 2/1 while they are here." See (Doc. No. 1-2 at 1). In response to these requests, Wegrzynowicz appears to have informed Coit that "[w]e are aware and will make the proper adjustments when it comes time" and Coit would "not be scheduled for any activities where [Johnson and Spearman] will also be present." See (Doc. Nos. 1-2 at 1; 1-4 at 1).

In general, this Court need not "credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which [the Court] may take judicial notice." See Brown v. Clemens, No. 22-cv-01067, 2025 WL 2422615,

at *5 (M.D. Pa. Aug. 21, 2025) (citations omitted).  Coit's inmate "request to staff forms" appear to be indisputably authentic documents, so the Court must determine whether to credit his averments about his actions on May 24, 2022, June 13, 2022, and June 22, 2022.  For the purposes of this motion only, the Court will credit Coit's averments pertaining to his submission of inmate request to staff forms on May 24, 2022, June 13, 2022, and June 22, 2022.  In so doing, the Court cautions that Coit's factual allegations must be contained in the pleadings as opposed to referenced in arguments or briefs.  The Court now turns to the merits of Defendants' motion to dismiss Coit's Eighth Amendment claims.

### b.    Cruel-and-Unusual-Punishment Claim

Coit asserts that Wegrzynowicz, Wynder, O'Mara, Kephart, and Wentzel violated his right to be free from cruel and unusual punishment under the Eighth Amendment.  (Doc. No. 22 at 10, 11.)  Defendants move to dismiss this cause of action by pointing out that it consists of "nothing more than bald assertions and legal conclusions, which the Court need not credit."  See (Doc. No. 24 at 9).  After reviewing Coit's general cruel-and-unusual-punishment claim, the Court concludes that he has failed to state a plausible claim for relief and will dismiss this claim.

The Court notes that Coit does not appear to have responded to Defendants' motion to dismiss this specific claim in his opposition brief.  See (Doc. No. 28 at 4–8).  Instead, Coit focuses on his Eighth Amendment failure-to-protect and conditions-of-confinement claims.  See (id. at 7–8).  Coit's failure to specifically address Defendants' motion to dismiss his general cruel-and-unusual claim in his opposition brief constitutes a waiver or abandonment of this claim.  See Orange v. United States, No. 23-cv-00393, 2024 WL 3939100, at *5 (M.D. Pa. Aug. 26, 2024) ("A brief in opposition to a motion to dismiss that fails to respond to a substantive argument to dismiss a particular claim results in the waiver or abandonment of that claim."

(citing <u>Dreibelbis v. Scholton</u>, 274 F. App'x 183, 185 (3d Cir. 2008) (unpublished); <u>D'Angio v. Borough of Nescopeck</u>, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999))).

Even if Coit had not waived or abandoned this claim, he has failed to factually develop the claim in his amended complaint. "The Eighth Amendment guarantees the right to be free from 'cruel and unusual punishments' while in custody." <u>See</u> <u>Ricks v. Shover</u>, 891 F.3d 468, 473 (3d Cir. 2018) (citing <u>Whitley v. Albers</u>, 475 U.S. 312, 318 (1986)). "A properly stated Eighth Amendment claim must allege a subjective and objective element." <u>See</u> <u>id.</u> (citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992)). The subjective element requires allegations showing that the "defendant official act[] with a 'sufficiently culpable state of mind,'" <u>see</u> <u>id.</u> (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)), while the objective element requires allegations demonstrating that the defendant official's conduct was "objectively 'harmful enough,' or 'sufficiently serious' to violate the Constitution." <u>See</u> <u>id.</u> (quoting <u>Wilson</u>, 501 U.S. at 298, 303).

In this case, in alleging Defendants' failure to protect, Coit does not connect his general cruel-and-unusual punishment claim to any action by a Defendant. Nevertheless, the Court recognizes that Coit avers that he was placed into handcuffs on July 4, 2022, allegedly because Smith, who was using Coit's email account at the time, sent an email to Spearman. (Doc. No. 22 at 8.) He does not, however, plead the personal involvement of any Defendant in placing handcuffs on him. <u>See</u> <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . ."). This failure alone warrants dismissal of any Eighth Amendment claim based on Coit being handcuffed on July 4, 2022.

Additionally, the placement of handcuffs on Coit could be construed as an excessive force claim. Where a prison official is alleged to have used excessive force in violation of the Eighth Amendment, the pertinent inquiry for the subjective element is "whether [the] force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." See Hudson, 503 U.S. at 7; Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 231 (3d Cir. 2015) (explaining that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated[,]" and "[t]his is true whether or not significant injury is evident"). In conducting this inquiry, there are several factors that a court must consider in determining whether a prison official has used excessive force against a prisoner, including:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

See Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley, 475 U.S. at 321).

As for the objective element, the pertinent inquiry is whether the prison official's actions were "harmful enough," see Hudson, 503 U.S. at 8, or "sufficiently serious," see Wilson, 501 U.S. at 298. "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (citation omitted). As a result, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" See Hudson, 503 U.S. at 9–10 (quoting Whitley, 475 U.S. at 327). Instead, the Eighth Amendment prohibits the use of force that offends "contemporary standards of decency[,]" regardless of whether "significant injury is

evident[;]" although, the extent of injury may provide "some indication of the amount of force applied" or "whether the use of force could plausibly have been thought necessary in a particular situation." See Wilkins, 559 U.S. at 37 (citation, internal citation, and internal quotation marks omitted).

Here, Coit does not allege any facts that would show a plausible excessive force claim simply because he was placed in handcuffs.  He does not allege how long he remained in handcuffs, see, e.g., Abdullah v. Seba, 658 F. App'x 83, 85 (3d Cir. 2016) (unpublished) (concluding that plaintiff could not establish cruel and unusual punishment where "[h]e was kept in restraints for 24 hours," he "was checked every two hours by prison officers and every four hours by medical personnel," and he "offered no medical complaints"), or the manner in which the handcuffs were placed upon him.  Coit does not allege any facts that would satisfy either element of an excessive force claim.  Accordingly, to the extent that Coit bases his general cruel-and-unusual-punishment claim on being placed in handcuffs on July 4, 2022, he has failed to state a plausible Eighth Amendment claim, and the Court will grant Defendants' motion to dismiss this claim.

### c.    Conditions-of-Confinement Claim

Defendants move to dismiss Coit's Section 1983 claim that Wegrzynowicz, Wynder, O'Mara, Kephart, and Wentzel subjected him to unconstitutional conditions of confinement in violation of the Eighth Amendment.  (Doc. No. 28 at 8–9.)  The Court will grant this part of Defendants' motion.

A plaintiff advancing an Eighth Amendment conditions-of-confinement claim must allege facts showing that: (1) they suffered a "sufficiently serious" deprivation; and (2) the prison official defendant had a sufficiently culpable state of mind.  See Clark v. Coupe, 55 F.4th 167,

179 (3d Cir. 2022) (quoting <u>Thomas v. Tice</u>, 948 F.3d 133, 138 (3d Cir. 2020)).  The first element is an objective standard requiring allegations that the plaintiff was denied "the minimal civilized measures of life's necessities."  <u>See id.</u> (quoting <u>Wilson</u>, 501 U.S. at 299).  It is insufficient for a plaintiff to allege that they were uncomfortable.  <u>See id.</u>  Rather, the plaintiff must allege that the conditions of their confinement posed a "substantial risk of serious harm" to their health or safety.  <u>See id.</u> (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)).  As explained above, the second element is subjective and requires allegations that the defendant was deliberately indifferent to a substantial risk of serious harm to the plaintiff's health or safety.  <u>See id.</u> (citing <u>Farmer</u>, 511 U.S. at 834).  This requires allegations that the defendant was aware of the risk and disregarded it.  <u>See id.</u> (citing <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 133 (3d Cir. 2001)).

In seeking dismissal of Coit's conditions-of-confinement claim, Defendants contend that Coit does not allege that he was deprived of adequate food, clothing, medical care, or shelter. (Doc. No. 24 at 9.)  Rather, Coit alleges that Defendants refused to provide him with "extra game time, keyboard, denture cup, and bucket," which are not deprivations of life's necessities.  <u>See</u> (<u>id.</u> quoting Doc. No. 22 at 9)).  Defendants also argue that Coit fails to aver that any deprivations posed a substantial risk of serious harm to his health or safety.  (<u>Id.</u>)

It is unclear from both the amended complaint and Coit's opposition brief which conditions of his confinement, outside of any alleged threats or acts by Smith, he believes supports his conditions-of-confinement claim against Defendants.  As Defendants point out, Coit does not allege that he was deprived of adequate food, clothing, or medical care.  He does, however, appear to contend that he was deprived of constitutionally adequate shelter insofar as Smith hit him with an unknown liquid, and he has a right to be incarcerated in a "shelter which

does not cause his degeneration or 'threaten' his mental and physical well being [sic]." <u>See</u> (Doc. No. 28 at 7 (citations omitted)).

To the extent that Coit claims that Defendants failed to protect him, the Court will separately address this claim below. As for Coit's other allegations related to his conditions of confinement, they are wholly insufficient to show that Defendants denied him "the minimal civilized measures of life's necessities," <u>see</u> <u>Wilson</u>, 501 U.S. at 299, or that Defendants were deliberately indifferent to a substantial risk of serious harm to Coit's health or safety. In this regard, his allegations about Spearman and Johnson do not plausibly demonstrate a deprivation of a constitutionally suitable shelter, and Coit has not alleged any facts showing that Spearman or Johnson posed a substantial risk of serious harm to his health or safety. To the contrary, other than his allegation that there was a separation order in effect and that Smith, pretending to be Coit, emailed Spearman, there are no plausible allegations in the amended complaint that Spearman or Johnson posed any threat to Coit. Instead, Coit alleges that being housed at the same prison made him uncomfortable about his safety. Even if understandable, this complaint does not rise to the level of an Eighth Amendment violation. Accordingly, the Court will dismiss Coit's general conditions-of-confinement claim against Wegrzynowicz, Wynder, O'Mara, Kephart, and Wentzel.

### d.    Failure to Protect

Defendants move for dismissal of Coit's Section 1983 failure-to-protect claim against them, arguing that he fails to plausibly allege the objective element of such a claim by failing to allege that he was harmed, suffered any injury, or contracted a disease due to being hit by the liquid Smith threw at him. (Doc. No. 24 at 8.) As explained below, the Court will dismiss Coit's failure-to-protect claim for reasons not argued by Defendants.

Prison officials have a duty "'to protect prisoners from violence at the hands of other prisoners.'"  See Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997) (quoting Farmer, 511 U.S. at 833.  However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety."  See Farmer, 511 U.S. at 834.  Therefore, for a prisoner-plaintiff to plausibly allege an Eighth Amendment failure-to-protect claim, they must allege that: (1) they were incarcerated under conditions posing a substantial risk of serious harm (the objective element); and (2) the prison officials involved had a sufficiently culpable state of mind (the subjective element).  See id. Specifically, the inmate must allege facts showing that the prison official knew of and disregarded an excessive risk to inmate health or safety.  See Hamilton, 117 F.3d at 746. Knowledge of the risk is subjective, such that "the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware."  See Beers-Capitol, 256 F.3d at 133. "Actual knowledge can exist where 'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,' and where 'circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it.'"  Bracey v. Pa. Dep't of Corr., 571 F. App'x 75, 78 (3d Cir. 2014) (unpublished) (quoting Beers-Capitol, 256 F.3d at 133).

In moving to dismiss Coit's claim for failure to protect, Defendants focus on Coit's allegation that Smith hit him with an unknown liquid.  Defendants cite to no case, and the Court has located none, in which a court determined that an inmate-on-inmate assault with an unknown liquid is "categorically exempt from Eighth Amendment failure-to-protect claims."  See McKee v. Salaman, No. 22-cv-01240, 2023 WL 4748192, at *6 (M.D. Pa. July 25, 2023) (rejecting

Defendants' argument that the plaintiff-prisoner failed to sufficiently plead the objective element

of an Eighth Amendment failure-to-protect claim because "[t]he Court does not agree that

inmate-on-inmate assaults with bodily fluids are categorically except from" such claims); see

also Farmer, 511 U.S. at 828 ("Prison officials have a duty to . . . protect prisoners from violence

at the hands of other prisoners").  Even if Coit did not allege that he was harmed at all, his

failure-to-protect claim would not necessarily be implausible.  Instead, it merely affects the types

of damages Coit could seek to recover.  See, e.g., Calipo v. Wolf, No. 18-cv-00320, 2019 WL

6879570, at *12 n.6 (W.D. Pa. Nov. 15, 2019) (pointing out that under the PLRA, "[s]hould

Calipo fail to establish that she sustained any physical injury as a result of Defendants' failure to

protect her from other inmates, she may be restricted to seeking nominal or punitive damages on

this claim" (citation omitted)), report and recommendation adopted, 2019 WL 6877181 (W.D.

Pa. Dec. 17, 2019); Donaldson v. Baldwin, No. 16-cv-01128, 2017 WL 513918, at *10 (S.D. Ill.

Feb. 8, 2017) (explaining that "[i]f the substantial risk of serious injury [to the prisoner-plaintiff]

has already passed" the PLRA would bar compensatory damages; however, the plaintiff may still

seek nominal or punitive damages for the failure to protect).  Therefore, Defendants' motion to

dismiss Coit's failure-to-protect claim will be denied.

Although the Court will deny this portion of Defendants' motion, the Court will

nevertheless dismiss Coit's failure-to-protect claim under Section 1915(e)(2)(B) because he has

not pleaded sufficient facts to satisfy either the objective or subjective elements of such a claim.

More specifically, Coit does not sufficiently allege facts describing the threat Smith posed to him

and that Defendants were aware of and disregarded an excessive risk to his health or safety.  In

this regard, Coit alleges that he, inter alia: (1) verbally informed Defendants that he "receive[d]

threats" from Smith, see (Doc. No. 22 at 7); (2) wrote a request to Wynder and Wegrzynowicz

23

on May 24, 2022, in which he informed them of Smith's "assaultive behavior" and told them that Smith "was threatening and delivering messages for . . . Spearman," <u>see</u> (<u>id.</u>); (3) wrote a request to Wynder, Kephart, Wentzel, Wegrzynowicz, and Boyce on June 13, 2022, "expressing safety concerns," <u>see</u> (<u>id.</u>); (4) wrote a request to Wynder, Kephart, Wegrzynowicz, and O'Mara on June 22, 2022, in which he let them know that he "was in fear for his safety," <u>see</u> (<u>id.</u> at 8); and (5) spoke to O'Mara and Kephart on July 6, 2022 "about all of his safety concerns." <u>See</u> (<u>id.</u>). Simply put, Coit does not describe Smith's alleged threatening conduct, such as whether he was threatening Coit with physical harm or some type of other harm. At this stage, and especially given the concerns the Court previously identified with the amended complaint, it is not reasonable to infer that Smith was threatening Coit with physical harm. Without knowing the extent of Smith's behavior toward Coit, the allegations in the amended complaint also do not satisfy the subjective element of a failure-to-protect claim because they do not show that Defendants were aware of and disregarded an excessive risk to his health or safety. Accordingly, the Court will dismiss Coit's failure-to-protect claim for the failure to state a claim for relief under Section 1915(e)(2)(B)(ii).

### 2.    Coit's First Amendment Retaliation Claim

Defendants move to dismiss Coit's First Amendment retaliation claim against Wynder, Kephart, Wentzel, Wegrzynowicz, and O'Mara. The Court will grant this part of Defendants' motion.

To state a plausible First Amendment retaliation claim, a plaintiff must allege that: "(1) [their] conduct was constitutionally protected; (2) [they] suffered an adverse action at the hands of prison officials; and (3) [their] constitutionally protected conduct was a substantial or motivating factor in the decision to discipline [them]." <u>See</u> <u>Watson v. Rozum</u>, 834 F.3d 417, 422

(3d Cir. 2016) (citations omitted).  As for the first element of a plaintiff's prima facie case, the filing of lawsuits and prison grievances constitute activity protected by the First Amendment. See id. (reiterating prior holding that a prisoner-plaintiff engages in constitutionally protected activity when they file a grievance against a prison official (citing Mitchell, 318 F.3d at 530)); Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (acknowledging its prior holding "that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment's guarantee of free access to the courts" (citation omitted)); Allah v. Seiverling, 229 F.3d 220, 223–25 (3d Cir. 2000) (concluding that the prisoner-plaintiff stated a First Amendment retaliation claim where he alleged that he had been kept in administrative segregation in retaliation for filing civil rights claims against prison officials).

Regarding the second element of a plaintiff's prima facie case, an adverse action is one that is "sufficient to deter a person of ordinary firmness from exercising [their] [constitutional] rights[.]"  See Mitchell, 318 F.3d at 530 (second alteration in original) (citations and internal quotation marks omitted); Fantone v. Latini, 780 F.3d 184, 191 (3d Cir. 2015), as amended (Mar. 24, 2015) (explaining that an adverse action must be "sufficient to deter a person of ordinary firmness from exercising [their] constitutional rights . . ." (citation omitted)).  However, to be actionable under Section 1983, the alleged adverse action must be more than de minimis.  See McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (explaining that the alleged retaliatory conduct "need not be great in order to be actionable, but it must be more than de minimis" (citations and internal quotation marks omitted)).

And, finally, with respect to the third element of a plaintiff's prima facie case, the Court observes that, "[b]ecause motivation is almost never subject to proof by direct evidence," a plaintiff must typically "rely on circumstantial evidence to prove a retaliatory motive."  See

Watson, 834 F.3d at 422. The plaintiff "can satisfy [their] burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." See id. (footnote omitted).

Here, Coit alleges that Defendants retaliated against him when they told him that he could not receive the "same privileges" as Lewis, i.e., "extra game time, keyboard, denture cup, and bucket," unless he withdrew certain grievances. (Doc. No. 22 at 9.) In moving to dismiss Coit's retaliation claim, Defendants argue that Coit's allegations are insufficient to show that he suffered an adverse action because the privileges Coit allegedly did not receive are de minimis and would not deter a person of ordinary firmness from exercising their constitutional rights. (Doc. No. 24 at 14–15.)[5] Additionally, Defendants point out that Coit continued to file grievances after the alleged adverse actions occurred, he does not aver that he was entitled to the same privileges as Lewis, and he does not allege that Defendants removed any of his existing privileges. (Id. at 15.)

Coit responds to Defendants' motion by asserting that he was subjected to a "Phase demotion which led to [a] denial of privileges such as visits, law library, general population, yards, and any other Phase two privilege," and which "essentially plac[ed him] back on disciplinary status for filing grievances only two weeks prior to the Phase demotion." See (Doc. No. 28 at 14). He also asserts that he was demoted and denied privileges like "those who were in the [BMU] whose progression requirements are the same, whose privileges are the same [as his privileges]." See (id. at 15).

---

[5] Defendants do not dispute whether Coit engaged in constitutionally protected activity. See (id. at 14).

After considering the parties' arguments, the Court finds that Coit has not plausibly alleged that he suffered adverse action to satisfy the second element of a First Amendment retaliation claim.  As with his Eighth Amendment claims, Coit includes factual allegations in his opposition brief that are not in his amended complaint.  Those allegations, at least in part, further develop his contention that Defendants retaliated against him when he refused to withdraw his two (2) grievances in July 2022.  However, the amended complaint contains allegations only showing that Coit believes that he was in the "same situation" as Lewis because they were "both BMU prisoners."  Coit does not allege facts showing that he was entitled to the requested privileges because of his status in the program, and this failure warrants dismissal of his First Amendment claim.  In other words, he has not alleged that Defendants denied him privileges or benefits to which he was otherwise entitled.[6]  Accordingly, the Court will grant Defendants' motion to dismiss Coit's First Amendment retaliation claim.

### 3.    Coit's Equal-Protection Claim

Coit asserts that Wynder, Kephart, O'Mara, Wentzel, and Wegrzynowicz violated his equal protection rights under the Fourteenth Amendment when they did not provide him with the same privileges as Lewis.  See (Doc. No. 22 at 10, 11).  Defendants move to dismiss Coit's equal-protection claim in large part because they believe that Coit's allegations constitute "nothing more than conclusions and bald assertions."  See (Doc. No. 24 at 13).  The Court agrees.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially

---

[6]  Defendants do not argue that a denial of benefits or privileges to which a prisoner is otherwise entitled would be insufficient to satisfy the adverse action element of a First Amendment retaliation claim.

a direction that all persons similarly situated should be treated alike.  See U.S. Const. amend. XIV, § 1; City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyer v. Doe, 457 U.S. 202, 216 (1982)).  To allege a plausible equal protection claim, a plaintiff must show that: (1) when compared with others similarly situated, they were selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.  See Vurimindi v. City of Phila., 521 F. App'x 62, 65 (3d Cir. 2013) (unpublished) (citing Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990)).  To be "similarly situated," parties must be "alike in all relevant aspects."  See Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008); see also Children's Health Def., Inc. v. Rutgers, the State Univ. of N.J., 93 F.4th 66, 84 (3d Cir.) ("At the pleading stage, . . . plaintiffs must adequately allege that they are alike in all relevant respects." (citations and internal quotation marks omitted)), cert. denied sub nom. Children's Health Def. v. Rutgers, the State Univ. of N.J., 144 S. Ct. 2688 (2024).

Here, because Coit is not a member of a protected class, see Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001) (concluding that prisoners are not members of a protected class); Cospito v. Heckler, 742 F.2d 72, 83 (3d Cir. 1984) ("As this court has noted, classification according to mental illness has not been recognized as a suspect class which requires heightened or strict scrutiny under the equal protection clause." (citations omitted)), he must proceed under a "class of one theory."  "[T]o state a claim for 'class of one' equal protection, a plaintiff must at a minimum allege that [they were] intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment."  Phillips, 515 F.3d at 243.  To be "similarly situated," parties must be "alike in all

relevant aspects." See Startzell, 533 F.3d at 203. Nevertheless, "'similarly situated' does not mean 'identically situated.'" See Harvard v. Cesnalis, 973 F.3d 190, 205 (3d Cir. 2020) (quoting Bennun v. Rutgers State Univ., 941 F.2d 154, 178 (3d Cir. 1991), abrogated on other grounds by St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515–16 (1993)). "[C]ourts conducting the 'similarly situated' inquiry 'should not demand exact correlation, but should instead seek relevant similarity.'" Id. (quoting Stimmel v. Sessions, 879 F.3d 198, 212 (6th Cir. 2018) (citation omitted)). Determination of whether individuals are similarly situated is a "'case-by-case fact-intensive inquiry.'" See McLaughlin v. Forty Fort Borough, 64 F. Supp. 3d 631, 648 (M.D. Pa. 2014) (quoting Suber v. Guinta, 902 F. Supp. 2d 591, 607 (E.D. Pa. 2012)).

In this instance, the Court agrees with Defendants that Coit fails to plead a plausible "class of one" equal protection claim. While recognizing that Coit and Lewis need not be identically situated, Coit does not plead sufficient facts showing that he and Lewis were alike beyond their presence in the BMU and participation in Phase 2 of the BMU program.[7] These limited factual allegations are insufficient for this Court to reasonably infer that Coit and Lewis were similarly situated for purposes of a "class of one" claim. Moreover, Coit's sparse allegations are wholly insufficient to show that Wynder, Kephart, O'Mara, Wentzel, and Wegrzynowicz lacked a rational basis for treating him and Lewis differently. Accordingly, the Court will dismiss Coit's "class of one" equal protection claim.

---

[7] Coit's allegation regarding his participation in Phase 2 might be contradictory at least in part because he avers that he initially asked whether he could receive the same privileges as Lewis because "he will not be able to participate in Phase 2 which allows [him] to go to population." See (Doc. No. 22 at 9).

### 4.    Coit's Due Process Claim

Coit asserts that Wegrzynowicz, Wynder, O'Mara, Kephart, and Wentzel violated his due process rights under the Fourteenth Amendment.  (Doc. No. 22 at 10, 11.)  Defendants move to dismiss this cause of action essentially because Coit has failed to allege any facts in support of it in his amended complaint.  (Doc. No. 24 at 9–10).  The Court again agrees.

The Fourteenth Amendment of the United States Constitution provides in pertinent part that: "No State shall . . . deprive any person of life, liberty, or property, without due process of law."  See U.S. Cons. amend. XIV, § 1.  To allege a plausible Section 1983 claim for the deprivation of procedural due process rights, "a plaintiff must allege that (1) [they were] deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [them] did not provide 'due process of law.'"  See Hill v. Borough of Kutztown, 455 F.3d 225, 233–34 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)); see also Ingraham v. Wright, 430 U.S. 651, 672 (1977) (directing that the reviewing court first determine "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property," and, if a protected interest is implicated, the court must "decide what procedures constitute 'due process of law'")  If no protected interest is implicated by the plaintiff's allegations, then "it is unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred."  See Harris v. Hines, No. 16-cv-00040, 2017 WL 4119743, at *5 (M.D. Pa. Sept. 18, 2017).

In their motion to dismiss, Defendants point out that Coit "fails to identify the protected liberty or property interest of which he alleges a deprivation, fails to state what process he was due and did not receive, and fails to aver he suffered any injury from the deprivation besides

conclusory claims of 'mental anguish.'" <u>See</u> (Doc. No. 24 at 10).  They also contend that if Coit asserts a due process claim based on his placement or phase in the BMU program, he lacks a constitutional right to be "housed in any particular custody or security classification." <u>See</u> (<u>id.</u> at 10 (citations omitted)).  Finally, they note that if Coit complains about any aspect of the handling of his grievances, he fails to state a claim for relief because the mere existence of a grievance process does not confer a cognizable liberty interest upon him.  <u>See</u> (<u>id.</u> at 11).

 In his response to Defendants' motion to dismiss, Coit argues that he has pleaded a plausible due-process claim because he was "demoted of [sic] his Phase two and placed into handcuff[s]." <u>See</u> (Doc. No. 28 at 10).  Coit also asserts that he "was denied a rationale or a hearing . . . on the Phase demotion." <u>See</u> (<u>id.</u>).  He contends that he was "compling [sic] with programing [sic] but [D]efendants chose to deny [him] a hearing or to properly document demotion," which violated his Fourteenth Amendment rights.  <u>See</u> (<u>id.</u>).

 After carefully considering Coit's contentions, the Court concludes they fail in two (2) respects.  First, there are no factual allegations in the amended complaint relating to Coit's demotion from Phase two of the BMU program.  Those factual allegations are included only in his opposition brief, and therefore the Court cannot consider them in resolving Defendants' motion.  Second, even if the Court could construe Coit's due process claim as relating to being placed in handcuffs, he does not allege that any Defendant was personally involved in placing him in handcuffs and, as the Court already explained, fails to describe the circumstances surrounding his placement in handcuffs, such as, <u>inter alia</u>, the type of restraints used (in case Coit is using "handcuffs" loosely), how long he was restrained, and where he was restrained. Therefore, Coit has failed to allege a plausible due process claim, and the Court will grant Defendants' motion to dismiss this claim.

D.    **Leave to Amend**

Having determined that Coit's Section 1983 claims against Defendants in his amended complaint are subject to dismissal, the Court must determine whether to grant him leave to file a second amended complaint. Courts should generally give leave to amend but may dismiss an amended complaint with prejudice where leave to further amend would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); see also Grayson, 293 F.3d at 108 ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile."). "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

Based on the Court's analysis above, the Court cannot state at this time that it would be futile to allow Coit to attempt to file a second amended complaint as to his Section 1983 causes of action under the First, Eighth, and Fourteenth Amendments. As such, the Court will dismiss those claims without prejudice to Coit reasserting them in a second amended complaint if he chooses to do so. On the other hand, the Court finds that it would be futile to allow Coit to amend his request for compensatory damages under Section 1983 because his allegations do not show that he suffered any physical injury from Defendants' conduct. Accordingly, the Court will dismiss without prejudice Coit's Section 1983 causes of action and dismiss with prejudice his Section 1983 claim for compensatory damages.

IV.    **CONCLUSION**

For the reasons stated above, the Court will: (1) grant Coit's motion for an extension of time to file his response in opposition to Defendants' motion to dismiss his amended complaint and deem his opposition brief to be timely filed; (2) grant Defendants' motion to dismiss Coit's amended complaint in all respects other than to the extent they sought dismissal of his Eighth Amendment failure-to-protect claim; (3) dismiss without prejudice Coit's Section 1983 causes of action under the First, Eighth, and Fourteenth Amendments; (4) dismiss with prejudice his Section 1983 claim for compensatory damages against Defendants for failure to state a claim under Section 1915(e)(2)(B)(ii); and (5) grant Coit leave to file a second amended complaint. An appropriate Order follows.[8]

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[8] The Order will contain additional information for Coit about the filing of a second amended complaint.